Good morning everyone and welcome to the Ninth Circuit. We have a number of cases submitted on the briefs. Those are Eric Villasenor v. William Barr is submitted. Second, Jerry Corral v. Andrew Saul is submitted. Next, Sarah Sayers v. Andrew Saul is submitted. And we're taking the cases out of order. So the first case for oral argument is Confederated Tribes and Bands of the Yakima Nation v. Yakima County and City of Toppenish. Counsel? Good morning, Your Honors. Anthony Broadman on behalf of the Confederated Tribes and Bands of the Yakima Nation. May it please the Court, I'll keep an eye on the clock and I would also like to recognize the members of the elected leadership of the Yakima Nation who have traveled here from Toppenish today. This case is another example of the United States breaking its word to the Yakima Nation and this Court should not allow that to happen. Great nations keep their word. The United States accepted back all jurisdiction over crimes on the Yakima Reservation with one exception and that one exception has two victims. In other words, if there is an Indian involved in a crime on the Yakima Reservation, the state lacks jurisdiction after retrocession. So that wasn't an authority that was granted by public law 280 is my understanding. Is that correct? That was recognized by the Supreme Court in a case that there would be jurisdiction where there were non-Indian victim and defendant. Is that correct? That's correct, Your Honor. There's two cases that carve out an exception in this case and they were recognized when the proclamation said in part. That is the mystery of the words in part. The McBratney style jurisdiction, which is state jurisdiction over crimes involving two non-Indians, a non-Indian victim and a non-Indian defendant on the reservation. The other category would be solemn, which would be state jurisdiction over a non-Indian victimless crime. So public law 280, what Washington got under that was all criminal jurisdiction. Is that correct? Well, what Washington got over that was all criminal jurisdiction except for on trust land within the reservation, but post absent eight subject matter that aren't really applicable here. The key thing here is that post retrocession, the idea was, and the idea was clear for three years. Everybody understood. So Yakima Nation had petitioned to have all of that jurisdiction back. Is that correct? Correct. And then in the proclamation, the state of Washington says, said we grant it in part and we deny it in part and said that in part it kept jurisdiction. So what does that mean given your theory of the case? There's two rationales for using the word in part. When they talk about in part overall, there were things that the Yakima Nation asked for that the state wouldn't give up. For instance, mental health jurisdiction off reservation. So they didn't ask for a mental health jurisdiction. Correct. So then it doesn't make sense to say we granted it in part and denied it in part. Well, it didn't give jurisdiction over off reservation trust land. Do you think that in part just meant in part of the total jurisdiction that would have been out there, not in part of the request that the Yakima Nation. That's true. When you talk about jurisdiction as a whole, your honor, it's also true when you talk about criminal jurisdiction on reservation, because the jurisdiction that was that the United States has after retrocession is not all jurisdiction. It does not include McBratney or solemn jurisdiction. This is not only a reasonable interpretation of what the proclamation said. It is exactly what the United States accepted. So the United States, as I read their acceptance letter in the Federal Register, didn't provide an interpretation. That's correct, your honor. So so we really don't have any interpretation in those documents. There are some emails and internal guidance later, but I didn't see it in the actual acceptance. I would not call the Roberts memoranda and the internal guidance. And I think they are highly published in the Federal Register. No, but the Federal Register was clear. It says we're going to accept the language of the proclamation. From our perspective, the proclamation is clear. It says you think it's it's unambiguous language. I do, your honor. I think it's very clear. And here's why. Not only do I think that the United States thought that for three years and they took the position formally three times. Here's what's critical to remember about Mr. Roberts. Well, just formally, are you referring to the emails and internal guidance? No, I'm referring to Larry Roberts, Mr. Roberts letter of November. There was a letter, unpublished letter. Well, it's and so subsequently we have some formal, another letter from the OLC and other federal agency interpretations. Do we, I'm not sure, I guess I guess a threshold question is do we care how a federal agency interprets a state proclamation? Well, here's why we don't have to worry about what the state proclamation says, because the amicus, as you'll hear in a moment and the Yakima agree that when the United States is looking at the proclamation, we look at what's apparent on the face of it and the body with the power to make that decision. Whether you're looking on the grand scheme of things, interior has the authority under 25 USC section two to manage Indian affairs, to manage the relationship between the federal government and the Yakima nation. That's all that Mr. Roberts is doing in November. Do we, do we interpret the proclamation consistent with Washington state law or with federal law with federal law in Washington? But the district court didn't do that. The district court didn't do that. Why is that? So if, if the state, for example, had issued its retrocession through a statute, which it would have been entitled to do, would you say we interpret, we think a federal agency should interpret the state statute as opposed to under federal law, as opposed to under state law? I think the, I think that this should always be resolved through a federal lens. And I think that that's what the, that's what your precedent requires. So Oliphant and Lawrence, those cases talked only about the validity of the acceptance. They didn't talk about an interpretation of the meaning of the state law. I think that's right, Your Honor. Is that right? So is there any case that says we would interpret a proclamation in this context? Not in the Ninth Circuit, but if you look at, if you look at Brown, Lawrence together, Omaha tribe together, all of these cases, they say, this is a federal lens. Brown says, do not make the tribe a political ping pong ball between the state and the federal government. So what we do is we look at the moment of acceptance because that provides clarity. This isn't contract law. At the moment of acceptance, there was not a federal interpretation. Well, there was a federal belief on what was being accepted. And that is crystal clear from, pardon me. I mean, the acceptance and the federal register have no interpretation at all. Right, but it's very- It wasn't until like over a year later, right? Well, it's in November of 2016. The closest three moments of this from the federal family are all consistent. If you look at the Larry, the Lawrence Roberts letter from 2016, excerpt record 233, what does he say? And again, this is the- That was some time later, is that correct? It was the following year. It was still- Yeah, it was a year later. It was still three years before Assistant Secretary Sweeney withdrew prior guidance. If we look at a federal agency's interpretation, why wouldn't we be bound by brand X to look at the most recent one? So the Supreme Court has said an agency can change its mind and then we're bound as long as it's a reasonable interpretation. Because PL280 is different. Because the moment of acceptance is- The moment of acceptance, there wasn't any interpretation. That's my problem here. Well, I would challenge the court slightly on that. I think that there was an understanding of what Mr. Washburn accepted because when- Well, all he said, all Mr. Washburn said is the language is clear. He said when the governor tried to recast the word as the word and to mean something different in a cover letter, Mr. Washburn said no. I think that's an overstatement, counsel. What he said, and it seems fair, and I wanted to ask this question, is we're not going to get into what the governor said in his statement, but he did not weigh in. As I read it, he did not weigh in on the substance of it. He just said the Department of Interior, when they accepted it, said the language is clear and if this is ever contested, we'll rely on the courts. I suppose I read it a little differently, Your Honor, because what I see is the cover letter trying to change the word and to mean and or and- Well, that's true. But I'm not sure whether it was changed. I mean, that's the debate. Did the tribe ever weigh in on the cover letter? Was there ever a response? No, the tribe had no role in that. No, but I mean, did you ever respond? Did the tribe ever respond? Throughout the process, throughout the- I didn't see anything in the record where the tribe wrote a letter to Interior and said, hey, see what the governor just tried to do? He's misinterpreting this. Well, I can find that record. I can find something on that, Your Honor, and I will try to present that in rebuttal. But here's the point. At that moment of acceptance, it's not defined by a later decision by Interior, by the withdrawal of all prior guidance, because we have three statements from the federal government under 25 U.S.C., the body with the authority to manage Indian affairs on the Yakima Reservation. And if you look at Mr. Roberts' letter in November- But now they're changed. So that was a year later doing a retroactive interpretation. Now we have a federal agency doing a different interpretation. But there is a- So how do we balance between them? Because you can't change PL-280 jurisdiction through agency fiat. There is a process- We've got the proclamation, which was accepted, uninterpreted, other than to say we'll rely on the courts. And then there was a subsequent interpretation by a federal agency, and now there's a different one. The same level of official within the Department of the Interior makes clear, because it's not clear to the governor. He's saying, we still think and or means and. So Larry Roberts writes him back in November and says, no. Here's the problem, counsel. And can mean and or. And so why is it just presumptively that you look at this and you say, well, it only means and? Don't we have to read that in context? No, because for three years, the United States had accepted under Executive Order 11-435, under 25 U.S.C. Section 13-23- They never said that and only meant and. They absolutely did, Your Honor. If you look at Excerpt 233, this is the top official- This is the Roberts' letter, you say? Yes, this is the top official within Indian Affairs. And he says, Washington State retains jurisdiction only over civil and criminal causes of action in which no party is an Indian. So what if the administration had changed between the acceptance and the Roberts' letter? Would that change your view? No, it wouldn't, because there's one way- Well, now an administration has changed and there's a different interpretation. Why do we not look at that? Because under the Executive Order that defines how these proclamations are accepted, under 25 U.S.C. 13-23, and under 25 U.S.C. 13-26, federal law determines how we can change PL-280 jurisdiction. I have one question before you sit down. Could the state have changed the word to or in the proclamation before submitting it for approval for the federal government without the tribe's consent? Yes, but that's not what happened here. I understand that's not what happened, but was it possible for that matter? It was possible for the United States to send anything to the federal government. The state of Washington. So the state of Washington, Governor Inslee says, this is what I mean. Could he have changed the language without consulting with the tribes? He could have. Here's the important part of that. The United States has the authority to read the four corners of the proclamation. So because we don't have the word or in there, it wouldn't- I can't speculate on how the United States would have interpreted that. But the amicus and the accommodation agree. If you look at the amicus brief, docket 20 at page 32, interior can accept based on the apparent meaning of state documents. And that's what happened here. Thank you. I'll reserve three minutes. May it please the court. Kirk Ellis on behalf of both defendants, City of Toppenish and Yakima County. I will be speaking for 10 minutes and Department of Justice, the amicus Stacey Stoller will be presenting for five. As the court can tell from the arguments of counsel, the Yakima nation can prevail on this appeal is by ignoring numerous key facts which are dispositive of this case. First, we must ignore the fact that criminal law over Indians was assumed by the state of Washington under Public Law 280 and RCW 3712. Second, we must ignore the fact that the U.S. Supreme Court determined that that assumption of jurisdiction was in fact valid. And that's the Confederated Bands and Tribes case from 1979. Third, we have to ignore the fact that the state actually retroceded part, specifically part of the jurisdiction. It previously assumed under Public Law 280. I don't mean to cut you off, but do you agree that this is ambiguous language or is it an ambiguous language? Your Honor, it read in context. I do not believe the language is ambiguous. It, the law, excuse me, the language when read in context makes very clear. That what we have to do is read it in context to make that determination. Precisely. The fact that and can mean and in some circumstances, or it can mean and or in other circumstances, that doesn't make it automatically ambiguous. Is that right? Exactly, Your Honor. And that's exactly what the Washington Court of Appeals held in the Zach case. What deference do we owe to the Washington State? Do you agree that this is a federal question or is it a state question? I would, I disagree that it's a federal question. My interpretation of this, and I believe the Zach Court's interpretation of this, is it's a state law matter. It's a state law proclamation. It's a state statute. I was confused by the district court because the district court seemed to suggest it was a state law question. But then it said that Zach's was only persuasive, not binding. So that suggests that it wouldn't have had to follow the state court on an interpretation of state law. So what did the district court do below? Your Honor, I believe the district court determined, it followed the reasoning of the Zach case, found that that was logical reasoning, but did its own interpretation of the facts. Under federal law or under Washington law? I believe the interpretation was under federal, or excuse me, under state law, Your Honor, based upon the Zach case and the statute at issue. Why would it be state rules that govern this analysis when, I mean, I understand it's a state proclamation, but it doesn't become effective until the government, the federal government acts. And the federal government can accept it or not or accept part of it or not. So why wouldn't it be the federal rules that govern under that structure? When dealing with the actual acceptance, I would agree that that's probably a federal question. What's at issue in this case and what was at issue in Zach is the scope of what was retroceded. And that determination was made based upon the actual proclamation. But again, wouldn't, I mean, there are cases, and granted they're not bindings, I think that the district court cases that say that the federal government can accept only part of what the state is asking to retrocede. So that would suggest that federal rules govern a scope analysis. I guess I would have a different interpretation of that. Those cases, Your Honor, I believe go to the validity of the actual retrocession, whether or not the retrocession itself was valid. The cases that we have cited in the Tingstadt or Tunstall case indicates that the actual scope of the retrocession is a state law interpretation. And again, back to our case and the district court's interpretation of Zach, I think it's very clear. What's being interpreted here is a state law proclamation and a state statute as to what was being retroceded. So can I ask you about that? How do we interpret this? You just said two things. It's a state law and a state proclamation. Do we interpret this as a statute, as a contract, as a treaty, as an executive order, as a regulation? What's the analogous document that we're reviewing here? Based upon the Zach case itself, it lays out that the appropriate interpretation would be as something akin to an executive order or a legislative act on behalf of the figurehead of the state. So it would be a legislative interpretation. So similar to a statute, in your opinion. Correct, Your Honor. Although executive orders might be different than statutes. True, true. So if we look at the proclamation as if it's a statute, and we say, you were careful to say it's not ambiguous, but clearly the language is susceptible to more than one interpretation or meaning. Maybe only one is plausible, but there's at least two ways to read it. Doesn't Washington state have the same rule as the federal law that we interpret language that's intended to benefit the Indian tribes to their benefit? Well, Your Honor, in this situation, if the tribe was a party to the contract or the legislative action, then perhaps that would be a valid argument. It's not a valid argument in this situation because the two parties involved were the state government and the federal government. But if we look at it as a statute, a state statute, and say that it's ambiguous, do we apply the canon of interpreting to the benefit of Indians? I don't believe that's the case, Your Honor. And even if that was the court's analysis, I would say, I would argue to the court and submit to the court that the interpretation given by the Zach court and the district court is to the benefit of the Yakama Nation. The Yakama Nation, as indicated in our briefing, is in the midst of a crime epidemic. They've actually reached out to the defendants asking for help in resolving these issues. To determine that the defendants are enjoined from actually participating in enforcing crime on the reservation is certainly not to the benefit of the Yakama Nation. So this is the most puzzling thing to me about this case. Why didn't the state simply say what it meant in the proclamation? I mean, if the state meant or and not and, why didn't you just use or in the proclamation? Your Honor, unfortunately, I can't answer that question. But I would indicate that it's a, you have to look at this as a package deal, I guess, is how I would say it. The proclamation by statute, by the RCW, the proclamation, if any of the retrocession request is denied, then the state is obligated to explain why the retrocession is denied. That's the, that is Governor Inslee's letter. It's explaining why the retrocession was denied. But it also elaborates on what the actual language of the proclamation means. So we can't look at the two in a vacuum. They are one and they're together. But do you think that the Governor Inslee's statement can be read to interpret the language? It does seem to me that we need to reject that. I mean, we got to look at this on the plain language of the proclamation. The fact that he tried to, whatever you want to say, clarify, change, it sort of doesn't matter. I would agree. And if we read... You agree. So you agree we don't look at the Governor's? If the court finds that the language is unambiguous, and I would argue that that should be what we determine, then I think reading in context, the district court was correct. However, if the court feels that it needs to go to the interpretation angle because there is some ambiguity or partial ambiguity, then the best evidence we have is Governor Inslee's letter, which he was required to send, and which Interior received before it made any statement as to what the retrocession being accepted was. So then if you go that route, are you suggesting that the 2016 letter from Interior was ultra... I mean, could the Interior not change its view in 2016 and say that they disagreed with the Governor's statement? Absolutely not. I think the letter actually contemplates that there could potentially be a court challenge like we have today. So what do we do with the 2016 interpretation from the Department of Interior? That was the guidance at the time. And the Interior expressly recognized that potentially there could be a court interpretation, and it acknowledged that the court interpretation is what would control.  It was an interpretation of the proclamation. Although apparently, I mean, there's an open question as to whether it's binding on us, because if it's a state issue controlled by state law, I think that gives a lot more authority to Zaks. If it's a federal interpretation, then it's maybe just persuasive. Agreed. Yes, Your Honor. Are you conceding standing at this point? You haven't had any chance. I got to be honest. I didn't find them very compelling arguments, but I'd be interested in hearing what you have to say about it. Your Honor, I actually, I would like to focus on the retrocession issue, because I think that's where the case, the heart of the case is. And I see I'm approaching my five minutes, so I would defer to the Department of Justice. Thank you. Thank you. May it please the court, you can move this. Can you show her how to move it down? Thank you. Much better. May it please the court, Stacey Stoler for the United States. I believe, Your Honors, that some of the more complex interpretive questions that we've gotten into this morning may actually not be necessary to reach in the context of this particular case. Although there are circumstances in which it will matter whether we are giving a federal interpretation or a state interpretation to a particular document, in this case, because the document can be interpreted and understood within its four corners, there is no need to ever reach that question. Similarly, the question of whether it should be interpreted as a contract or as a piece of legislation, there are certainly aspects of both to it. And it is implausible to believe that an offer that has been clarified before acceptance can, in any circumstances, be accepted in a manner contrary to the clarification. And there are indeed the cases on which the tribe relies, on which the nation relies, make clear that there are aspects of Section 1323 that call out for analogies to contract reading. They analogize it to a compact interpretation in the Dyer v. Sims Supreme Court case. And in the case of compact, contract analogy is very appropriate to draw on. So can I ask, is the government's position that this is unambiguous language on the four corners? Yes. Okay. Then if it's unambiguous, and I know this isn't the first time this has come up, but if it's unambiguous, how do you have two different positive government interpretations? I believe this goes back to the sort of a genuine ambiguity versus a seeming ambiguity question. There is certainly two ways to read the language, as you have pointed out. And it is only upon close reading of the proclamation that you can understand why it is that the nation's interpretation is simply not consistent with the remainder of the proclamation. So the Department of Interior in 2016 just posited a totally implausible interpretation then? I don't know that it's implausible, but it certainly doesn't look beneath the surface of this. The Department of the Interior maintains ongoing relationships with the nation, and it was clearly at that point in time the nation's interpretation that the Department of Interior was accepting. There is no indication though, Your Honor, that it was the nation's interpretation at the time that the proclamation was submitted. Well, I wanted to ask about that because the governor sends forward this statement, and the tribe says, well, we contested that. Is there anything in the record to suggest that the tribe actually contested the governor's interpretation or clarification, whatever you want to call it? So this is an extremely incomplete record. If you were looking for the negotiation history between the nation and the state as well as between the state and Interior. Did they write anything to Interior? After the governor sent this over, did the tribe ever write anything to Interior to say, hey, nice try, but you're changing history here? I don't believe so, and the governor certainly in his April 19th letter to the Department of Interior set out his belief that the tribe had fully understood the scope of jurisdiction as set forth in the governor's interpretation, and there was no objection to that statement. There is also the fact that prior to acceptance, as recited in the OLC opinion, the FBI's reading of the proclamation, which it shared with Interior and is referenced in Interior's Washburn letter, is in fact consistent with the state's interpretation. So there is no history of anyone prior to acceptance identifying it that way, and the history of negotiations shows that the whereas clause included in the, I believe it's the sixth or seventh whereas clause, which recites that the nation acknowledges that the state will be retaining jurisdiction over non-Indian defendants, was included after having been acknowledged that the state was not returning that part of jurisdiction that the nation had sought to obtain. Are we supposed to give, does the government want us to give any deference to Department of Interior on the interpretation here? I don't believe deference is due to anyone. If there had been an interpretation in the acceptance, that would be a different issue, but we are not faced with that question here, and the interpretation the nation is putting forward collapses the jurisdictional retrocession in paragraphs one through three into a single type of retrocession, so there is no difference on their reading between a full retrocession and a partial retrocession. So just to clarify then, Judge Ikuda asked about Brand X earlier. Is the government's position that this is not a Brand X issue at all because deference isn't due? To the extent that there were a question of deference, certainly the U.S.'s current position would be the one that would be entitled to deference. We don't think deference is appropriate here. We have an acceptance that accepted the proclamation by its terms, and the proclamation's terms can be interpreted and are not ambiguous within their four corners. So certainly to the extent deference were appropriate, it would be the current position that would matter, but we don't think interpretive deference is needed here. I do have one quick question. What in the record shows us that the federal government believed that the ore construction was the proper construction at the time of acceptance? So I believe that nothing suggests that we accepted or that we took any position on that. I do believe that the Washburn letter... I understand there wasn't a formal interpretation at that time, but things happened. Things were put into place and actions happened, and so we have in the record information from the U.S. attorney's office and information from the county sheriff's office with direction saying that that's consistent with the and construction. So the only interpretation that we have that's prior to acceptance is the FBI's acceptance... is the FBI's interpretation, which is described in the OLC opinion and recited in the Washburn letter, and that interpretation, as explained in the OLC opinion, is consistent with the state interpretation. That is that they would be retaining jurisdiction over cases in which non-Indians were either defendants or victims. All right, so the FBI interpretation, and that's the only thing in the record? That's... the interpretation itself is not, but it is referenced in the record. And the best evidence, I believe, of the federal position at that time is the acceptance itself, which accepted the proclamation by its terms, as well as the Washburn letter, which suggested this was a matter for neighbors to resolve together, and in the event of disagreement that couldn't be resolved that way, not to come back to Interior, but instead to turn to the courts for the definitive interpretation. Thank you. Thank you. We have some time for rebuttal. Thank you, Your Honors. I have to challenge my colleague's use of a public safety boogeyman in this case. Retrocession is the public policy of the Yakima Nation. It is written into state statute. It is written into 1323. So the idea that there is an issue with public safety for the Yakima Nation, which is the single largest police presence on the Yakima Reservation, is a... it's part of their sovereignty and part of their... I think your point's well taken. Thank you, Your Honor. This isn't contract law. This is not a moment where we're asked, is there a mutual mistake? Was there an offer and acceptance? This is an exercise of the federal government's authority under PL-280 under 1323. This is an exercise of the federal government's authority under Executive Order 11-435. The moment of acceptance is all that matters. And we can talk about deference, but what's really important here is that the Washburn letter, the Roberts memorandum, the Roberts letter, they are all crystal clear proof of exactly what was accepted. Why don't we just ignore all those letters and look at the language on its face in the context of how it happened? You can do that too, but you have very good lawyers and very good federal officials disagreeing on both sides of it. I think we have to look at what is the best evidence of what happened in April, 2015. And we have that. We have clear statements from Mr. Roberts, who is the top of Indian Affairs. Let's be fair. That was a year later. It is a reasoned statement that comes with... Yeah, but the new one is a reasoned statement too from Washburn. You mean from OLC? It's a reasoned statement. It's entitled to no more deference than the argument you just heard. That's my point. I don't know. Maybe it is titled to deference, maybe it's not. But even if we rejected all that, I think you have an uphill battle on your interpretation here because the presumption is that the state of Washington granted... It isn't internally consistent with some of the provisions in the document itself. I would disagree, Your Honor. I think that the use of the word and, as the court pointed out, if they meant or, why didn't they write or? Why does the Yakima nation have the burden to explain to everybody else what the word and means? I had to ask you a question. You said you might have something for rebuttal on. I wanted to respond to that, Your Honor. It's not relevant to whether or not the nation jumped in right away because we look at the moment of acceptance. And the best evidence of the moment of acceptance is Mr. Washburn's response to the governor's cover letter. What does he say? He says, we're going to look at the proclamation. We're not looking at the cover letter. There is nothing under federal law that talks about a cover letter. The cover letter is just proof that the governor is trying to change the language of the proclamation. This case is as if the United States told the Yakima nation for three years, the sky is blue, and then they changed their mind and said it was green. And it's been green for three years. Can Interior or the state of Washington change a retrocession once it's occurred? No. There is only one way to change PL280 jurisdiction. You can accept a retrocession. An act of Congress, basically. Well, you could change PL280, but you can also seek the consent of the Yakima nation. Washington can attempt to assert additional PL280 jurisdiction. That's what they should have done here. If they wanted more than what they retroceded in the first place, they should have stood by what they said in the proclamation. They should have talked to the United States and attempted to acquire more jurisdiction. What they maybe should have done is changed the and to an or, if that's what they wanted. They should have. If they intended to do so, they should have written it clearly, and they didn't. And that should be the end of the story. Thank you, Your Honors. We thank both sides for their argument. The Confederated Tribes and Bands of the Yakima Nation versus Yakima County and City of Toppenish is submitted.
judges: Ikuta, R. Nelson, Hunsaker